# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BENJAMIN J. BARTLETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:17-cv-01050-SEM** |
| | ) | |
| **COUNTY of McLEAN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## SUMMARY JUDGMENT ORDER

**SUE E. MYERSCOUGH, U.S. District Judge:**

Plaintiff, Benjamin J. Bartlett, proceeding pro se and currently incarcerated at Pontiac Correctional Center, filed suit under 42 U.S.C. § 1983.  Following merit review, the Court concluded that Plaintiff had stated a constitutional claim against Defendant Jamey Kessinger, the superintendent of the McLean County Detention Facility ("jail"), for failure to protect Plaintiff from a substantial risk of serious harm [6].  The Court also substituted Defendant McLean County for the jail as a possible indemnifier.  Defendants have filed a motion for summary judgment [29] to which Plaintiff has responded [31], and Defendants have replied [32].  Based on the

1

parties' pleadings, depositions, affidavits, and other supporting documents filed with the Court, Defendants' motion for summary judgment is GRANTED.

## I. MATERIAL FACTS

On August 19, 2015, police officers assigned to the Bloomington Task Force ("police") arrested and interviewed Plaintiff. During that interview, Plaintiff provided information on Darcell Van, whom Plaintiff stated was an associate. The police then transported Plaintiff to the jail, where Plaintiff told an intake officer that he was an informant for the police and that he had enemies in custody, but Plaintiff could not provide their names. (ECF 29-1: p. 6; 29-3: pp. 69:14-19, 70:1-6.) Plaintiff was placed in administrative segregation under the classification "protective custody." (29: p. 4:16; 29-1: pp. 7, 14; 29-3: p. 46:19-22.)

On August 28, 2015, two unidentified correctional officers transferred Plaintiff from segregation to G block because Plaintiff's cell door in segregation was malfunctioning. (29-1: p. 7; 29-3: p. 81:20-22.) G block is a medium security area consisting of two sets of three cells located across from each other and separated by a common area. Plaintiff estimated that beginning on September 1,

2015, he addressed "two or three" request forms to the shift sergeant, asking to be returned to segregation. (29-3: pp. 35:16-20; 46:11-14.)

In one of Plaintiff's requests, he explained that he did not "get along" with a detainee Plaintiff identified by cell number, and he wanted to be moved "before certain situations get out of hand...." (*Id.* pp. 36:1-4; 37:21-25; 40:17-23). Plaintiff stated that he did not receive any written responses to his request, but he spoke to a correctional Sergeant who told him that the jail did not have any bed space due to overcrowding, and "they would ... move [Plaintiff] when ... they fix [the cell] gate." (*Id.* p. 36:12-25.)

Sometime during Plaintiff's stay in G block, the detainee Plaintiff identified by cell number, whom Plaintiff later learned was named Terry Jenkins, told Plaintiff that Van was "family." (*Id.* p. 23:5-10.) Plaintiff interpreted Jenkins' comment as an indication that Jenkins was either related to Van or that they were close friends. Plaintiff speculated that Jenkins may have learned that he had provided information to the police about Van from paperwork he left unattended in his cell. (*Id.* pp. 25:21-25; 26:1-5.)

On September 10, 2015, Jenkins entered Plaintiff's unlocked cell and began a conversation that turned physical. Plaintiff fractured his finger during that altercation. G block was immediately locked down and remained in that status when Plaintiff was transferred from G block the next day.

Plaintiff admitted that upon his entry into the jail on August 19, 2015, he did not know Jenkins and thus, did not identify Jenkins as a possible enemy to the jail's intake officer. Plaintiff acknowledged that upon his transfer to G block on August 28, 2015, he was unaware of any connection between Jenkins and Van.

Plaintiff agreed that he did not have any interaction with Defendant Kessinger from August 19, 2015, when he entered the jail, to September 10, 2015, when the altercation at issue occurred. (*Id.* pp. 80:19-22; 82:19-25; 83:1-2; 86:19-25; 87:1.) Plaintiff also acknowledged that he could not produce evidence showing Kessinger's personal involvement when he was transferred to G block on August 28, 2015. (*Id.* pp. 83:3-6, 15-19, 24-25; 84:1-3; 85:3-6.) Plaintiff stated that he sued Kessinger because he "overseas everything that goes on in the jail...." (*Id.* p. 83:15-21.)

Defendant Kessinger stated that as the jail's superintendent, he is not involved in the jail's booking process, and he did not participate in transferring Plaintiff from segregation to G block on August 28, 2015. Kessinger noted that the only issue he could recall involving Plaintiff occurred over two months after Plaintiff's altercation with Jenkins when Kessinger responded to Plaintiff's November 2015 grievance in which Plaintiff asked for copies of the transfer requests he submitted while he was housed in G block. (29-1: p. 14; 29-2: p. 4:24.)

## II. THE LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 324 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

A party opposing a properly supported motion for summary judgment must cite to particular parts of the record or show that the materials cited by the movant do not establish the absence of a genuine dispute. *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence in support of the non-movant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

### III. THE FOURTEENTH AMENDMENT AND THE
### FAILURE TO PROTECT STANDARD

Because Plaintiff was a pretrial detainee and not a convicted inmate, his claim proceeds under the Fourteenth Amendment instead of the Eighth Amendment.  *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) ("[C]onstitutional rights as a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment.")  "Although the Eighth Amendment does not apply to pretrial detainees, pretrial detainees are entitled to *at least* as much protection as the constitution provides convicted prisoners."  *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005) (emphasis in original).  Thus, the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'"  *Id.* at 478 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)).

### IV. ANALYSIS

Defendant Kessinger contends that he is entitled to summary judgment on Plaintiff's failure to protect claim because Plaintiff has

not satisfied his burden of establishing Kessinger's personal involvement in causing Plaintiff's injuries.

The Seventh Circuit has long held that 42 U.S.C § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (internal quotation marks omitted); *see also Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation).

In Plaintiff's brief, he cites to Defendant Kessinger's affidavit, in which Kessinger outlines "[t]he information *we* had and entered into the computer" during Plaintiff's intake on August 19, 2015. (29-2: p. 1:3 (emphasis added).) Plaintiff claims that a jury could reasonably infer that Defendant Kessinger's use of the term "we" shows his personal involvement.

Despite Plaintiff's reliance on the aforementioned testimonial evidence, resolution of Defendant Kessinger's motion for summary judgment does not depend upon the information Kessinger may have known at the time of Plaintiff's initial entry into the jail. Based

8

on that information, Plaintiff was placed in administrative segregation for his protection.

Instead, under the established facts presented, Plaintiff had to produce evidence showing that Defendant Kessinger knew that Plaintiff had been transferred to G block from segregation and either facilitated, approved, condoned, or thereafter ignored Plaintiff's transfer. *See Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) ("To show personal involvement, the supervisor must know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.").

In this case, Plaintiff concedes that he cannot produce evidence showing Defendant Kessinger's personal involvement when he was transferred to G block on August 28, 2015. Similarly, Plaintiff does not offer evidence from which a reasonable inference can be drawn that Kessinger had knowledge that Jenkins posed a threat to Plaintiff while they were housed in G block. *See Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015) ("[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an

inference that the official to whom the complaint was communicated had actual knowledge of the risk.").

During his deposition, Plaintiff claimed that he sued Defendant Kessinger because of his supervisory position as the superintendent of the jail.  However, "under § 1983, a plaintiff may not rely on the doctrine of respondeat superior to hold supervisory officials liable for the misconduct of their subordinates." *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002).  "Instead, the supervisory officials also must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *Id.* at 614-15.  Because Plaintiff fails to offer evidence of Kessinger's personal involvement in moving Plaintiff out of administrative segregation, Kessinger and by extension, Defendant McLean County, are entitled to summary judgment.

**IT IS THEREFORE ORDERED**:

>    **1)    Defendants' motion for summary judgment [29] is GRANTED pursuant to Fed. R. Civ. P. 56. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff.  The case is terminated, with the parties to bear their own costs.  All deadlines and internal settings are vacated.  All pending motions not addressed in**

**this Order are denied as moot.  Plaintiff remains responsible for the $350 filing fee.**

**2)  If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose...has some merit" from a legal perspective).   If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered July 18, 2018.


s/ Sue E. Myerscough
_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE